# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 97-20354

_____

JANE CHACKO,

Plaintiff-Appellee,

versus

TEXAS A & M UNIVERSITY, ET AL.,

Defendants,

EMILY ASHWORTH; SUSANNE DROLESKEY,

Defendants-Appellants.

_____

Appeal from the United States District Court
For the Southern District of Texas
(H-95-CV-4637)

_____

June 17, 1998

Before POLITZ, Chief Judge, GARWOOD and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Emily Ashworth and Susanne Droleskey take this interlocutory appeal from

the partial denial of their motion for summary judgment, contending that they are

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entitled to qualified immunity from suit in their personal capacities. For the reasons assigned, we affirm.

## BACKGROUND

Jane Chacko is a Canadian citizen who volunteered at the International Student Services Office at Texas A&M University. In July 1993 Chacko was approached by Droleskey, the International Student Affairs Director, about a full-time position as Specialist in the Sponsored Student Program. Chacko accepted the position, but because she did not have an H-1B visa allowing employment in the United States, steps were taken to obtain one.

Chacko received a letter dated August 2, 1993 officially offering her the position and Droleskey obtained permission from her supervisor, Ashworth, to increase the position's salary $120 per year to meet the visa requirements. The necessary documents were submitted on August 27, 1993, and on September 20, 1993, after traveling to Canada at her own expense, Chacko received the required visa.

In the meantime, an anonymous letter was sent to Congressman Jack Fields, complaining that Texas A&M's hiring procedures were not followed, excluding potential American citizen applicants from consideration. A copy of this letter was forwarded by the Congressman to the Immigration and Naturalization Service and

to Texas A&M. Although Chacko had completed all employment paperwork, including authorization for the direct deposit of her paychecks, Droleskey ordered that the position be re-opened because the position had not been posted for a minimum of one week as required by Texas A&M procedures. Chacko was informed of the re-opening, understood that she might not be hired, but nevertheless agreed to the procedures.

After the position was re-opened and applications were accepted, Droleskey opted to interview Chacko and two other candidates in late October. Aware that Chacko had obtained the visa, and finding her the most qualified, Droleskey offered Chacko the position on November 8, 1993 with employment to begin two days later.

In an office meeting on November 10, Droleskey made known her employment decision. In response, a program staff member complained about the hiring of a "foreigner," charging that it was "un-American." The complainer also challenged the procedures by which Chacko had been hired.

Chacko had begun working that day, but after the meeting Droleskey asked her to leave because of the complaint and the need for an investigation. An investigation into the complaint was initiated by Droleskey on November 12th, with supervisor Ashworth's approval. Ashworth joined in suspending the position.

3

Having received no information, Chacko met with Ashworth on Droleskey's suggestion in early December. Ashworth told Chacko that the position was being closed. Chacko then spoke with Texas A&M's Vice President and staff attorney to no avail. Realizing that she had been terminated, Chacko returned to Canada.

In January 1994 the position was re-opened and an American citizen was hired. After filing a complaint with the Equal Employment Opportunity Commission, Chacko filed the instant action against several Texas A&M officials, alleging violations of Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. The defendants filed a motion for summary judgment on various grounds, including qualified immunity. The magistrate judge, trying the matter by consent, dismissed Chacko's Title VII claim, finding her allegations constituted citizenship or alienage discrimination, which is not covered by Title VII, as opposed to national origin discrimination. The court found citizenship discrimination actionable under § 1981, and a § 1983 cause of action under the due process and equal protection clauses. All defendants except Ashworth and Droleskey were granted immunity from suit in their personal capacities. Ashworth and Droleskey timely appealed.

**ANALYSIS**

The denial of summary judgment on a qualified immunity claim is immediately appealable, even when genuine issues of material fact may exist, when

4

the order at issue is based on a question of law.[1] Viewing the facts in the light most favorable to the nonmovant, we review an immunity determination *de novo*, but only to the extent that any disputed facts are severable from and not central to the matter of qualified immunity.[2]

We assess the defense of qualified immunity in a two-step process. We first determine whether the plaintiff has alleged the "violation of a clearly established right" under "currently applicable constitutional standards."[3] If we find such we then must determine whether the defendant's conduct was "objectively reasonable in the light of the clearly established law at the time of the incident."[4]

Ashworth and Droleskey dispute that an action for alienage discrimination under 42 U.S.C. § 1981 is clearly established. They contend that it is unclear whether alienage discrimination is covered by § 1981 and, if so, whether § 1981 prohibits alienage discrimination by both public and private persons. It has long been established, however, that § 1981 provides protection against discrimination

---

[1] **Wren v. Towe**, 130 F.3d 1154 (5th Cir. 1997) (discussing **Behrens v. Pelletier**, 516 U.S. 299 (1996)).

[2] **Id.**

[3] **Hare v. City of Cornith**, 135 F.3d 320, 325 (5th Cir. 1998).

[4] **Id.**

5

on the basis of alienage.[5]  Although questions may have existed previously about whether § 1981's protections against alienage discrimination extend to both public and private actors,[6] the 1991 amendments to § 1981 make clear that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."[7]  As the conduct in question occurred well after the 1991 amendments, we must find Ashworth's and Droleskey's contention that the law was not clearly established to be without merit.

We find the argument that the § 1983 equal protection action is preempted by Title VII to be equally without merit.  The district court correctly concluded that Chacko alleges alienage discrimination which is not actionable under Title VII, and concomitantly not barred therefore by Title VII.[8]

Ashworth and Droleskey also challenge the district court's finding that issues of material fact about whether their conduct was objectively reasonable precludes summary judgment.  They contend that the dispute about whether a property

---

[5] **Takahashi v. Fish & Game Comm'n**, 334 U.S. 410 (1948); **Graham v. Richardson**, 403 U.S. 365 (1971).  **See also Garner v. Giarrusso**, 571 F.2d 1330 (5th Cir. 1978).

[6] **See Bhandari v. First Nat'l Bank of Commerce**, 829 F.2d 1343 (5th Cir. 1987) (en banc), *aff'd*, 887 F.2d 609 (5th Cir. 1989) (en banc).

[7] 42 U.S.C. § 1981(c) (as amended Nov. 21, 1991).

[8] **Espinoza v. Farah Mfg. Co.**, 414 U.S. 86 (1973).

interest existed demonstrates that reasonable individuals could differ, entitling them to qualified immunity on the due process claim. In exercising appellate jurisdiction over this interlocutory appeal, however, we do not decide the sufficiency of the evidence or resolve disputed factual contentions.[9] Rather, we view the facts in the light most favorable to the nonmoving party.[10] It is indeed manifest that Ashworth and Droleskey cannot rely on a material factual dispute as a basis for summary judgment on appeal when such facts must be construed at this time in favor of Chacko.

An examination of the summary judgment record discloses additional disputed issues of fact which are essential to determining whether the employment process and conduct were objectively reasonable. Chacko alleged and introduced summary judgment evidence that the actions by Ashworth and Droleskey were based on her citizenship.[11] Ashworth and Droleskey alleged and introduced summary judgment evidence that a Department of Labor investigation motivated their actions. Documentary evidence of the alleged Labor Department

---

[9] **Coleman v. Houston Indep. Sch. Dist.**, 113 F.3d 528 (5th Cir. 1997).

[10] **Id.**

[11] Although Ashworth and Droleskey correctly note that individual liability under § 1983 does not exist for the acts of subordinates, Chacko's allegations and summary judgment evidence is based on their direct acts and omissions, as is the district court's analysis.

investigation is not contained in the record however, and it is unclear whether the investigation into irregularities in the hiring process related to Chacko's citizenship. In addition, the reasonableness of the employment actions under the surrounding circumstances cannot be assessed because no evidence was presented about the procedures generally followed when an investigation is initiated. These disputed and unresolved issues of material fact cannot be the basis for the relief sought.[12]

The judgment appealed is AFFIRMED.

---

[12] **See Naylor v. Louisiana Dep't of Corrections**, 123 F.3d 855 (5th Cir. 1997).